Our first case this morning is 523-0729 Smith v. Grove. I think I've got Ms. Anderson for the appellant and Mr. Litchfield for the appellee. Is that correct? That's correct. I don't think there's any procedural things we need to take care of before we get started. So, counsel, are you ready to proceed? Go right ahead. Good morning. May it please the court, my name is Christine Anderson. Myself, along with Zane Cagle, are here representing Lisa Smith, who is the plaintiff appellant in this matter. The trial court erred in this case in granting George Grove's motion to dismiss on either of the grounds of affirmative defenses that were asserted by George Grove. Specifically, Mr. Grove asserted release as grounds for dismissal. In this case, Grove is not named on the release, which is unambiguous, and it's between Smith and Lewis, Grove's mother and the owner of the vehicle. Under all the principles of Illinois contract law, which I'll address further in a moment, the court should have been bound by the four corners of the settlement contract. Intent should have been derived solely from the written, executed settlement contract itself. No one identified any ambiguity in the document, so no extrinsic matters should have been considered, and that should have been the end of the inquiry, and the court erred in dismissing the case based on release. The other affirmative defense asserted by Grove was that he said a settlement was reached between himself and Smith. There was absolutely no evidence of that whatsoever, and the court erred in granting the motion on those grounds. Grove filed his motion to dismiss under 735 ILCS 5-2-619A, 6 and 9. 6 is the provision that covers release. 9 is the provision that covers the settlement because its defendant is barred by any other affirmative matter avoiding the legal effect. Under that provision, if the grounds for dismissal don't appear on the face of the pleading, the complaint, then the motion should have been supported by affidavit, and no affidavits or testimony or any evidentiary basis whatsoever was submitted with Grove's motion to dismiss, nor did the trial court hold an evidentiary hearing. And under that section, 619, in a case, a jury case, where a demand for a jury is timely made, which was the case here, then the trial court is compelled not to resolve any questions based on affirmative defenses, especially without an evidentiary hearing. It's to go to the jury. So the trial court erred on those grounds. Counsel, you claim that Grove should have attached an affidavit saying he didn't have insurance? No, Your Honor. He should have attached an affidavit establishing what he contends. He contends there was a settlement breached. There wasn't a settlement breached in this case because one of the contingencies of Smith's offer that was set forth, should the court look at that plural evidence or the extrinsic matters, which, again, we argue is not appropriate since we have a written contract in this case, but if you look at the letters that they did attach, Smith made an offer in April that contained four contingencies in order for USAA to accept it, and one of which was at that point, Grove was required to provide some sort of proof as to what insurance he did or did not have. To this day, we still don't know what insurance he has available. Well, if he did an affidavit, I don't have insurance coverage, isn't he admitting a crime? Certainly. However, Lisa Smith sustained an amputated leg in this accident. It's incumbent upon all the parties involved to make sure she exhausts every avenue of recovery. Alternatively, if he has some form of insurance or assets, etc., then that's something she needs to know. That's why it was one of the contingencies of the settlement offer because, obviously, $100,000 in no way comes close to fully capitating her for her damages here. So if there is other insurance out there, then it's incumbent upon her to make sure she exhausts every avenue of recovery to try and come close to compensating her for the damages that she sustained from this accident. Now, in this case, USAA didn't provide any proof. They didn't even provide information as to what insurance he did or did not have. They didn't even provide a statement from George Bogan. He didn't either, saying, I don't have insurance or this is my insurance or anything, which is customary in the industry for an insured to provide an affidavit. In fact, actually, I take it back. He wouldn't be admitting a crime because he was also covered under Lucinda Lewis's policy. And if he turns out he did not have his own auto, then there's no requirement under the law to have insurance. But those are things that we still, to this day, don't know. It's possible that he did have an auto and that he does have additional insurance, and that is why USAA, when they responded and didn't provide any proof of his insurance status, that's why their response was a rejection of Smith's offer and constituted a counteroffer. When USAA was... I don't mean to stop you, but they tendered, if I remember correctly, policy limits, and then also the amount, if I've got it here, $2,946 for the property damage, which I think was higher than what was requested, which they had to do under the law.  So they sent the check, you all accepted it, cashed it, dispersed the funds? Correct. But if you look closely at the documents that were exchanged, we offered originally to sign a release of Grove. Instead, they tendered two releases that only named Lucinda Lewis. They didn't say in their letter that they were accepting our offer. They didn't say anything in the letter about if you accept the checks tendered, that they would be requiring a discharge or a release of Grove. And certainly they hadn't complied with all of the contingencies that Smith set forth, specifically with respect to proof of insurance being the most important. And they said, attach our proposed releases in an effort to try and get this resolved. Obviously, the parties hadn't reached an agreement at that point. If you look at the proposed releases, they added additional material terms. The proposed releases also reserved the rights to Lucinda Lewis to pursue any claims that she had against Smith, which arguably it was her vehicle. She could have turned around and asserted a claim against Smith or Smith's insurance for her own property damage. Who knows what other lawsuits she wanted to pursue against Smith, but that reserved the right. That was never offered in Smith's offer. Also, USAA added a clause whereby they were to be indemnified by Smith for any indemnified and held harmless for any medical bills. That also was not part of Smith's original offer. And so clearly, Smith was reasonable in agreeing to accept the counteroffer that released only Lucinda J. Lewis, because she was reasonable for two reasons. One, there was the existence of the negligent entrustment claim, which clearly George Grove had a list of offenses as long as you're armed, some of which were within a year of his accident, driving with methamphetamine on campus. He was arrested shortly after the accident for driving on, again, for possession of methamphetamine and driving on a suspended license. We don't know when his license was suspended, but certainly it could have been at the time of this accident. It was not a burden to prove the negligent entrustment claim because that was already settled. That was settled with Lewis. Obviously, USAA was more worried about protecting its named insurer, Lucinda Lewis and itself, and leaving Smith free to go and pursue the issue of Grove, because he was clearly a bad actor here and a reckless driver, and to see if we could get additional insurance or assets from Mr. Grove. And so certainly that Smith was reasonable in thinking, okay, they've changed the terms. We are going to accept the counteroffer. And then a written settlement agreement was entered. And the settlement— I'm going to stop you there. So you sent the letter April 30, 2021. Then USAA sent back, I'm assuming some sort of correspondence, saying here's what we are tendering. Did you all respond and tell USAA, no, we don't agree to these terms? We are not going to accept these terms as is? Did you respond to their so-called counteroffer? No, we responded by accepting it. We accepted the counteroffer. So you accepted the counteroffer. We accepted the counteroffer, which was—which switched the terms from a settlement of Grove to a settlement with Lucinda Lewis. And so—and that was very reasonable. Again, the—with respect to the providing proof issue on insurance, USAA did not even provide a statement from George Grove. Never mind an affidavit or anything like that. What their letter said is, to our knowledge, we don't know if he has a—we don't think he has a policy of his own. And he's a listed driver on his other policy. So, clearly, you know, it could be that the reason they couldn't provide proof is because George Grove does have additional insurance. We don't know at this point. But, yeah, we were fully within our rights to accept the counteroffer with the modified terms and the failure to meet the contingencies of our offer, and then enter into the binding settlement contract. All of the cases that Grove relies upon don't have application to this case, because all of the cases deal with the situation where Grove's settlement agreement is clearly between the parties, mind you. In this case, we're talking about correspondence between Smith's attorney and USAA. Grove is no one—we have no idea what Grove's intent is in any of this, nor Smith. But the cases relied upon by Mr. Grove deal with a situation where an oral settlement was reached, generally memorialized before the court, sometimes confirmed in a memorialization letter. And then, for some reason, the parties decide they don't want to abide by the terms of the oral settlement agreement that was reached, and so no writing is ever effectuated. And in those circumstances, the court says, yeah, we're going to—the policy behind this is we want to make sure oral agreements are enforced. Absolutely. So we're going to enforce it, despite the fact that no writing was ever effectuated. That's not the circumstances that we have here. There were no oral communications. There was no oral agreements. All there was was an offer, a rejection of that offer. Under Illinois law, if you don't meet the terms of the offer precisely, that constitutes, as a matter of law, a rejection and a counteroffer. And that's what happened in this case. So USAA made their counteroffer. They're the ones who drafted the releases. This is a sophisticated insurance company. They're well aware—they were aware of the existence of George Grove. Illinois will not allow a court to rewrite a contract, especially when a term could so easily have been inserted and was not. USAA is the one that chose not to include George Grove on the releases. And so then at that point, we have a binding contract, and all the rules of contract law kick in. The intent is derived solely from the four corners of the actual release. In fact, the property damage release brings me to the next argument. The court is not to consider any extrinsic matters unless there's an ambiguity identified. Now, in this case, no one identified an ambiguity. Not the trial court, not Mr. Grove. In fact, Grove argued the opposite. He argued that the patent was not ambiguous. He's trying to find that the provision of the word heirs, that Lucinda Lewis and her heirs and assigns covered him. Now, that's where the joint tortfeasor kicks in for one thing. Under the Joint Tortfeasor Act, it's very clear under OSAP and all the other cases following it that when there's two people responsible for causing the accident based on their negligence— here, negligent entrustment and negligent driving— a release of one joint tortfeasor does not release any other joint tortfeasor unless they are specifically named by name. It's a bright line test. They have to be named by name. So in this case, USAA, as a sophisticated drafter, certainly must have been aware of the law in Illinois. But with respect to heirs, the interpretation of heirs, that's clearly boilerplate language. There's lots and lots of cases. If you look at the release, it says his slash her heirs. The poverty damage release doesn't even refer to heirs. If you look at the revision of rights for Lucinda Lewis, also it lists Lisa Smith's heirs and representatives that was never contemplated by anyone to include George Grove. He was never identified as an heir in any kind of correspondence from USAA or in their counteroffer. In fact, as I previously stated, nothing in USAA counteroffer ever said, we are also including this to be a settlement of George Grove, or we expect that by signing this release, you are releasing George Grove. That was never said. That was never contemplated. And the trial court erred. And specifically what the trial court said shows the error. The trial court said, I find it was the party's intent during negotiations to settle off rights. I see my time is up.  And in this case, and the court based that on the fact that they found, that the court found it was inadvertent leaving George Grove's name off the release. There's no evidence of that. No one has claimed any inadvertence in leaving Mr. Grove's name off the release. So the trial court, based on those two things, making a ruling to dismiss was error. Permanent and reversible error. Are you suggesting that subsequent to the settlement, that USAA still has an obligation to ensure Grove? I think, Your Honor, that will come down to what happens if the case goes to trial. Will there be bad faith? Does George Grove have a bad faith claim? He probably does. And so I don't know if that will end up coming into play. You know, that's a few steps down the road. I don't know that we know the answer to that. Because all we have with respect to the issue of insurance is the statement by USAA that, to our knowledge, he did not have any coverage other than his policy. So I don't know. Unfortunately, the debt sheet was not submitted to the trial court. And it's not part of the record on appeal. And so all inferences should be construed in favor of Lisa Smith. And in this case, I think the inference is that perhaps he does have additional insurance. I don't know. Is this case about trying to get coverage from USAA for your client? Or is it about a cause of action against George Grove? Is that supposed to be an individual? It's about a cause of action against George Grove. The trial court dismissed it. And the trial court should not have done so on either the grounds of release or that there was any kind of settlement agreement between Smith and Grove. Because there was not. Thank you.  Do you have any questions, Justin King? No, thank you. All right. King, you actually have your time to revoke. Thank you.  Good morning. May the court please. My name is Daniel Litchfield. I represent the defendant, Appali George Grove. I once had a very able advocate stand up in my situation against me and address the court by saying so much to do and so little time in which to do it. Let me begin. It is clear under Illinois law that you can have settlements that are not in some large settlement agreement that is entitled settlement agreement. It is clear that the cases hold that those settlements can be proven by evidence of verbal or oral agreements. None of those cases, however, say that you cannot have a settlement agreement in Illinois that is evidenced by writings. That would seem to be odd to exalt oral agreement over writings that also are evidence of an agreement, and that's just not the law. There was a deal here. There was an offer, April 30th, 2021, Mr. Cagle's letter, and under a section that's entitled time-limited offer of settlement, there are four enumerated provisions, Arabic numerals 1, 2, 3, and 4. They are tender of payment of the limit. The limit was paid here, and nobody disagrees with that. Tender of proof that this is the limit. The letter states that it attached the declarations page of the policy and that there's no other insurance. The letter said we're not aware of any other insurance. Tender of a check for $1,500 in property damage. For the longest time, the argument was that we had not had a meeting in the mines because we sent them a check for $2,900 instead of $1,500, but as we pointed out in our brief, it seems now to not be an issue. The law requires us to pay Ms. Smith all of her property damage. How do you respond to their argument that you should have done more than just say, we're not aware of any other coverage? I mean, they're saying, why should we believe you? Well, first of all, they did because they cashed the check and nobody came back to us and said we want more. Second, they say that there's a custom to do more. There's not a scintilla of evidence in this record of such a custom. There just isn't. I've been doing this kind of work largely for insurance carriers since 1983, and I wouldn't, if I was an expert, I wouldn't justify such a custom exists. But the key here, no record whatsoever. We just hear arguments of counsel that, oh, they should have done more. They should have done an affidavit. This is what is usually done or what is always done. Those are arguments of counsel, very able counsel to be sure, but they're arguments. There's no record of any of that. Now, we also have well-established law in Illinois that a settlement between parties can be binding even if it contemplates a later writing, as long as that later writing is not a condition precedent to the deal. This is a classic example of what we saw in cases like Lorton from this district and the State of Glassman from the first, where there was contemplation of a later writing, and the court held, well, you had a deal, and you can't come in and say, oh, because I didn't sign a later writing, because a later writing didn't emerge, or because I was dissatisfied with the later writing, that you didn't have a deal after all. The fact of the matter was that they had a deal. Here, we had a deal as of that May 18, 2021 letter from USAA. Now, today, for the very first time in this case, we heard the suggestion that, well, it somehow matters that that was from USAA and not from George Grove. The letter says George Grove is our insurer. The letter actually discusses George Grove at great length. It says the driver was George Grove, who is our insurer's son and is a listed driver. Further, he is a resident relative. He did not have a policy of his own. Well, if that's the case, then what about her argument that his name is not on the release? Well, that gets several points. The first and most important point is we still have an agreement. The agreement was established by the combination of the 4-30-21 letter from Mr. Cagle and the response letter from USAA. And the letter from Mr. Cagle says flat out in three places, and we've quoted it in our brief, this is to resolve all claims against George Grove and your named insurer. It says that. It's all in the record. That's in the record. Now, that's at record C-157 is that letter. And then the letter back from us was at C-155. And that's the letter where we indicate that the checks have been sent overnight, that we have met the fourth of the four enumerated provisions in Mr. Cagle's letter, which is that everything was to be delivered by 5 p.m. on the 21st of May, 2021, and indicated in the letter of 5-18. That's been done. That's out there. We've already cut the checks. And here are the amounts of the checks, and they're coming to you. Those are the checks that we know were cashed, negotiated, an important part of a settlement that that action was taken. But the letter back tells, and by the way, this letter says, this is in response to the demands in your April 30th letter. Four things under the title, time-limited offer of settlement. One, two, three, four. Expressly in response to that. And among other things it says, this is to resolve these claims. What are these claims? These are the claims that are identified in the April 30th, 2021 letter from Smith. Items one, two, three, four. We do those things. We're told that is the time-limited settlement offer. We're told that's the deal. The point is under Illinois law, once you have a deal, you've got a deal. Even if there's some contemplation of something later, and that can include releases, you've got a deal. Illinois appellate courts have said in numerous cases that we rely on that this is important as a matter of public policy. It's Illinois public policy to support settlements, to not allow parties to try to get out of settlements later, to not allow parties to try to change the deal later. The trial court here had written evidence of the agreement between these parties. That's in your record. The estate of Glassman is one of the important cases that we've cited, and the thing I want to tease out of that right now is that the level of specificity there was that there would be a settlement of, quote, all her claims, close quote. Here, the letter that we have, coming back to them, in response to their detailed recitation of what those claims are, says to resolve these claims. It fits hand and glove with the precedents, and again, there's no basis whatsoever to be seen in these cases because in those precedents, the evidence of the settlement agreement was verbal communications rather than written ones, that somehow written communications are insufficient under Illinois law. I would assert that it would be better public policy and is consistent with Illinois law in all sorts of ways that I'm happy to go into, that one ought to, if you're going to exalt one over the other, exalt the writings, the written communications, establishing a settlement over people's statements about what their oral communications were. That's no reason to distinguish these cases. So we had assertions a little bit ago about the idea that the settlement releases that were done later, after the agreement was reached by the parties, the follow-on releases, are, quote, settlement agreements. That's the be all and end all. There's nothing else here. Don't look at anything else. Ignore the man behind the curtain kind of an argument. The problem with that is that these releases were contemplated to be a later act, which is entirely consistent with Illinois law. And you see that repeatedly in the marriage of Horton, in the Glassman case, in numerous other cases that we've cited, that some later writing, some later act by the parties that's contemplated does not undo a deal that is, in fact, done. That's the problem with that argument. The other problem with that argument is if we were to elevate these releases, and there are two of them, one for the property damage to 2946, the other for the poll limit, if we were to elevate them to the status of a final written settlement agreement where nothing else matters, you know, first of all, that's kind of a new argument, one of many that we've encountered in this appeal. But, you know, where do we sign it? If that's our settlement agreement, four corners, don't look at anything else, ignore the man behind the curtain, where did we sign it? And where, by the way, does it address all four of the terms that are set out in Mr. Cagle's letter of April 30th, 2021? Error number 1234. Those aren't all addressed by these releases, which were contemplated as a later act of the parties but are not the parties' sole evidence of agreement. It's not like an integrated settlement agreement where lawyers get together and do whereas clauses and all of that. That's not what we had here, and not what is required by Illinois law. The cases are very clear that you don't have to have something like that in order to have a settlement in Illinois. We heard the argument that somehow or another there's a defect in the circuit court's opinion because there was no affidavit presented to the circuit court pursuant to the dictates of 2619A. The problem is that the motion that my clients filed in the circuit court was twofold. Yes, it was a 2619A motion, but it was also a motion to enforce a settlement, a very common type of motion seen in our courts. There are arguments about, well, gee, you know, the trial court ignored that. But that's not clear at all. In fact, the opposite is clear from the trial court's decision, where it makes a specific reference to the fact that the motion was alternatively for enforcement of a settlement, irrespective of 2619A. Moreover, if one was to go to the notice of appeal in this case, which is at record C211, that notice of appeal expressly makes reference to the motion for enforcement of settlement as a distinct matter from the 2619A aspect of the motion in the trial court. At the very end, they set out exactly what they want. You know, this is common in a notice of appeal. And they state flat out, send it back down to the trial court with instructions to deny that motion to enforce settlement and then separately to deny anything under 2619A. So it just doesn't hold up to assert at this point in time that there's a defect in the trial court's order in that regard. What we have, and what is important to always keep in mind, is a trial court that faced a motion to enforce a settlement. That motion to enforce a settlement relied upon the offer in the April 30, 2021 letter and the acceptance in the May 18, 2021 letter. That order granted the motion to enforce that settlement based upon that evidence. There's no error there. We now hear for the first time that there's some defect in the agreement that the parties reached because the release said that there would be a hold harmless or an indemnification. Something to that effect. Yet, in the April 30, 2021 letter, there was a provision that said, and by the way, my law office will indemnify you against all links. That was right there from the outset. Again, this is something new that's been brought up in this court. It was not raised in the court below, but I don't think it leads any place anyhow. I have a couple of questions. Please run. You've argued that our standard of review is abuse of discretion. First, I want you to explain why Judge Parker's ruling is not an abuse of discretion. Second, why it was not error for him to admit the correspondence and other evidence surrounding the settlement to show the intent of the parties. First question, Your Honor. You've actually asserted that there are two standards of review in play here. We indicated right up front in our brief that for anything that's a matter of law, of course this court reviews that de novo. But we also took issue with the idea that absolutely everything that could be before this court would be de novo, and we pointed out that the case law is clear that any fact-finding done by the circuit court would be reviewed on an abuse of discretion standard. Why didn't he err? Because everybody accepted these things as true. There were no objections, and to this day there are no objections to the authenticity, foundation, truthfulness for what is stated on the face of these letters. There is just no dispute that those were the four things that were in their time-limited demand. There is no dispute what was said in the May 16, 2021 letter in response to that, accepting. Was this settlement negotiated with an adjuster or an attorney? Your Honor, the record reflects no evidence of an attorney being involved on our side in the course of the settlement that was done. The letter of May 18, 2021 does come from somebody at USAA who I believe their letterhead indicates. It's one Jamie Blake, and he's in Auto Injury Solutions, which is a department at the company. There's no statement indicating that he is an attorney. So that's the best answer I can give you based on the record. Thank you. I'll give you a minute to wrap up. Okay. I would just ask that the court continue to remember that we can have written evidence of a settlement agreement in Illinois. We don't have to have a document that says settlement agreement, and then sign. We can have a settlement evidenced by communications back and forth in writing. We also very clearly can have contemplation of a later document, such as a release, as long as that's not a condition precedent to the deal. The deal was struck when we accepted those four stipulations set out in the April 30, 2021 letter, and that was done on Mr. Groh's behalf on May 18, 2021. At that point, the trial court had plenty of evidence to support its decision. There was no dispute about that evidence. There was no evidentiary issue raised by either party as to either side's presentations. So as a consequence, I strongly urge this court to affirm the circuit court's ruling. Any further questions? If not, I'll sit down. Thank you, sir. Appreciate it. Again, to reiterate, all of those cases to which he's referring, which contemplate a later agreement, there was no later agreement. In this case, there was, and it was drafted by USAA. In that case, all of Illinois contract law says you are bound by the four corners of that agreement, period, paragraph. If an insurance company was allowed to just add parties post hoc based on the prior negotiations, that would set contract law on its head. You can't just insert a party that's not named into a contract. Then the parties would never be able to rely on the actual terms of the written agreement. In this case, they tendered the release, and that became the contract. And so the court was not appropriate in considering any extrinsic matters. Now, with respect to the claim on the standard of review, we set forth a case law that shows when a motion to dismiss based on, I'll read it. Chalkwood's decision to grant or deny enforcement of a settlement agreement made on the motion pleadings and attachments without holding an evidentiary hearing is reviewable de novo. That's exactly what happened here. There was no evidentiary hearing. There was no evidence other than the release that was between Smith and Lewis. And so the standard of review is de novo. With respect to the USAA's letter, it does not ever say, and they have not identified anything where it's called in acceptance, or whether they say that it will operate that there's an agreement to discharge growth. In fact, all it says is, at this time, we're offering the policy limits of $100,000 in an effort to resolve these claims. Remember, there was bodily injury and there was property damage. Those are multiple claims. We sent the checks overnight, attached our proposed releases for both Ms. Smith and Mr. Lingenfelter. So clearly, the parties were still negotiating, and that's a point of the property damage as well, to show the initial letter by Smith was not a letter memorializing some sort of oral agreement. In fact, if USAA had never responded to Smith's letter, would they be able to argue that there was an enforceable settlement agreement at that point? Of course not. So you have to look at it. If the court is going to consider parole evidence at all, which they shouldn't, then you have to look at the offer. The letter of Smith was just an offer. And so USAA, under contract principles, rejected it and submitted their own counteroffer. That counteroffer was limited to a settlement between Smith and Lewis. And in fact, a writing was infatuated. So all those claims about the writing doesn't have to be infatuated, there was a deal. No, the deal becomes the actual written document. That is the deal. Also, with respect to Section 219, keep in mind that is the only section under which Grove filed his motion. So they can argue, is really a motion to enforce a settlement irrespective of 219? Grove is the one who chose to assert his motion solely under Section 219 for both enforcement of a settlement, and therefore there should have been evidence, and any questions of fact should be resolved by the jury, not the judge. The judge is finding that there was inadvertence in leaving Grove's name off the release when nobody has argued that, and in finding that there was a settlement during negotiations, those are not proper grounds in either respect to set aside or to dismiss this case. And the trial court committed reversible error. At the very least, if there's some issue on settlement with the intent of the parties, that needs to go back to court to be resolved by the jury with actual evidence. We haven't even heard anything about Grove's intent, and he was a party, and we did cite a case in this brief, Elliot, where the statements of the attorneys, they don't establish the intent of the parties. In this case, the intent of Smith and the intent of Grove, they're not in the record on appeal. There's no basis to show that they intended to settle with each other at all. There's no evidence of it. And therefore, for all of these reasons, we should find that the non-abuse settlement contract between Smith and Lewis is limited to just that, and Grove should go forward and the case should be reinstated in full as respect to George Grove. Thank you. Any questions? Thank you, counsel. Thank you. Obviously, we will take the matter under advisement. We will issue an order in due course.